IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Horacio Vazquez,       ) | |
|       ) | |
|   Plaintiff,     ) | |
|       ) | |
|   v.       ) | Case No. 04 C 861 |
|       ) | 04 C 1798 |
| Central States Joint Board,     ) | |
| International Union of Allied Novelty &   ) | Hon. Mark Filip |
| Production Workers, and Production     ) | |
| Workers Union Local No. 10,     ) | |
|       ) | |
|   Defendants.     ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Horacio Vazquez ("Plaintiff" or Vazquez") filed two separate actions against the

defendants in the Northern District of Illinois, case numbers 04-C-861 and 04-C-1978.[1]  In the

first action, Plaintiff filed a Motion to Vacate Arbitrators' Awards (D.E. 1 in case No. 04-861),

seeking to vacate an arbitration award upholding his termination as a business agent of defendant

Central States Joint Board ("CSJB") and the decision of defendant Production Workers Union,

Local No.10 ("Local No. 10") to remove him as an elected officer.  In the second suit (D.E. 1 in

case No. 04-C-1978), Plaintiff filed a four-count complaint against defendants CSJB,

International Union of Allied Novelty & Production Workers ("IUANPW" or "International

Union") and Local No. 10 (collectively "Defendants"), alleging that the Defendants (1) breached

certain union governing documents (Counts I, II and IV); and (2) violated the Labor-Management

Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.* (Count III).

---

[1]  On August 18, 2004, the Court consolidated these suits for all purposes.  (D.E. 25 in case
No. 04-861.)

Before the Court is Defendants' motion to dismiss the Plaintiff's Motion to Vacate Arbitrators' Award and Plaintiff's Complaint under Federal Rules of Civil Procedure 12(b)(4), (5), and (6). For the following reasons, Defendants' motion is granted in part and denied in part.

## BACKGROUND

I.    The Parties

Plaintiff Vazquez is a union member, former union employee, and a former union officer. He is presently a member of defendant Local No. 10, and he is the former President of defendant Local No. 10 and business agent of defendant CSJB. (D.E. 1 in case No. 04-1798 ¶ 6.) Vazquez served as President of Local No. 10 from January 11, 2002, until the Executive Board of Local No. 10 removed him from office on November 25, 2003. (*Id.* ¶ 13.) CSJB hired Vazquez as a business agent on April 15, 1996 (*id.* ¶ 14), and he remained in that position until he was terminated on August 4, 2003 (*id.* ¶ 19).

The Defendants are affiliated unions. Defendant IUANPW is an unincorporated association and labor union. (*Id.* ¶ 8.) Defendants Local No. 10 and CSJB are unincorporated associations and labor unions affiliated with the International Union. (*Id.* ¶¶ 7, 9.) In terms of hierarchy, CSJB is subordinate to International Union, and Local No. 10 is subordinate to both the International Union and CSJB. (*Id.* ¶ 10.)

II.    Plaintiff's Termination as a CSJB Business Agent

On August 4, 2003, Vazquez and CSJB President Mark Spano ("Spano") had a "verbal altercation concerning the administration of a collective bargaining agreement." (D.E. 1 in case No. 04-861 ¶ 13.) According to Vazquez, this disagreement cost him his job as a CSJB business agent. Vazquez contends that Spano immediately terminated Vazquez (D.E. 1 in case No. 04-

2

1798 ¶ 19) solely based on the disagreement (*id.* ¶ 20) in an effort "to chill, discourage, and repress the exercise of freedom of pure speech by any union member, any union officer[,] or any union business agent" (*id.* ¶ 22).

On August 6, 2003, Vazquez invoked a grievance procedure to contest his termination as a CSJB business agent, which permitted him to appeal adverse employment decisions to an arbitration panel. (*Id.* ¶ 35.) On August 12, 2003, Spano, on behalf of CSJB, denied Vazquez's grievance. (*Id.* ¶ 36.) Vazquez appealed the denial of his grievance to an arbitration panel on August 18, 2003. (*Id.* ¶ 37.) On November 4, 2003, the arbitration panel rendered a decision upholding Spano's decision to terminate Vazquez. (D.E. 1 in case No. 04-861 ¶ 23.)

Vazquez takes issue with the manner in which the arbitration was conducted. Vazquez contends that the grievance procedure was a matter of contract, and the contract "was specific about the selection and establishment of an appeals panel to hear the appeal of Spano's denial of [Vazquez's] grievance." (D.E. 1 in case No. 04-1798 ¶ 38.) With regard to the composition of the arbitration panel, Vazquez contends that the contractual grievance procedure required that he serve on the panel (as President of Local No. 10), that Spano would serve on the panel (as President of CSJB), and that Vazquez, as the party who filed the grievance, would designate a third panel member. (*Id.* ¶¶ 39-41.) Spano, however, prevented Vazquez from sitting on the panel on the ground that Vazquez was also the party who had filed the grievance (and was presumably not disinterested), although Spano indicated that he would remain on the panel despite his involvement in Vazquez's termination and the fact that Spano's actions were at issue. (*Id.* ¶ 42.) (It turns out that Spano did not remain on the panel; rather, as discussed below, he convened a panel that was allegedly biased against Vazquez, and he allegedly did not permit

3

Vazquez to have his designee sit on the panel.)

Vazquez proposed that both he and Spano recuse themselves from the panel, and that Vazquez designate the third panel member, who would then make the arbitration award. (*Id.* ¶ 44.) Spano rejected Vazquez's proposal on September 9, 2003, and demanded that Vazquez immediately designate the third panel member or be considered to have abandoned his appeal. (*Id.* ¶ 45.) Vazquez contends that there was no contractual or constitutional authority that supported Spano's conduct, and that Spano's deviation from the specific terms of the arbitration agreement violated the arbitration agreement, fundamental fairness and traditional notions of due process, and implicated Vazquez's rights under the LMRDA and the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185. (*Id.* ¶ 49.)

On September 12, 2003, Vazquez informed Spano that he had no intention of abandoning his appeal, and that he would appeal Spano's plan for establishing an arbitration panel to the International President of defendant IUANPW under the provisions of the IUANPW constitution. (*Id.* ¶ 50.) In this regard, Vazquez contends that "[i]n Article 8, Section 4 and Section 5, the [IUANPW's] Constitution provid[es] that the International President of the IUANPW is authorized to investigate and rectify the affairs of its subordinate bodies including the CSJB when there exists reason to believe the activities of the subordinate body are improper or unconstitutional." (D.E. 1 in case number 04-861 ¶ 18.) Vazquez also contends that these provisions permit a member or officer to complain to and appeal to the IUANPW President to conduct such an investigation. (*Id.*) Vazquez indicated to Spano that Vazquez would "seek direction from the President of the IUANPW, as to the proper course of action regarding the establishment of the arbitration panel[] under the [c]onstitution of the IUANPW." (D.E. 1 in

4

case No. 04-1798 ¶ 51.)

Vazquez wrote a letter to the IUANPW President, Hermes Ruiz ("Ruiz"), on September 12, 2003, that requested Ruiz to determine the proper procedures for establishing an arbitration panel under the IUANPW constitution. (*Id.* ¶ 54.) Ruiz did not "acknowledge, respond, or reply to [Vazquez] regarding [Vazquez's] pending appeal or request for intervention."[2] (*Id.* ¶ 63.) Vazquez contends that Ruiz's failure to respond to him "violated the implied contract, as embodied in the IUANPW constitution, which contractually promised to allow an appeal of decisions committed by subordinate officers and by implication implied a response and decision regard[ing] any such appeal." (*Id.* ¶ 64.) Vazquez also suggests that Spano engaged in improper *ex parte* communications concerning Vazquez's request for intervention. (*Id.* ¶ 59.)

Spano went ahead with the arbitration appeal, putting together a panel composed of two individuals, the President of Production Workers Union Local 18 and the Secretary Treasurer of Local No. 10. (*Id.* ¶¶ 67-71.) Vazquez contested the convening of the arbitration panel on the ground that he had a pending appeal to the President of the IUANPW concerning the composition of the panel, and Vazquez requested a stay of the proceedings until the IUANPW considered his appeal. (*Id.* ¶ 83.) When it became clear to Vazquez that the arbitration proceeding was going to take place despite his pending appeal to the IUANPW President, Vazquez designated a third individual, Jeff Keating ("Keating"), to sit on the arbitration panel. (*Id.*) On November 4, 2003, the panel, in the absence of Vazquez's designee, Keating, decided

---

[2]     Vazquez contends that he also wrote to Ruiz again on October 14, 2003, requesting Ruiz's intervention under the IUANPW constitution. (*Id.* ¶ 75.) Ruiz, once again, did not respond. (*Id.* ¶ 77.) Vazquez alleges that this continued to breach the "implied promises" in the IUANPW constitution in that Ruiz failed to "respond, accept, or decide, or acknowledge [Vazquez's] appeal or request for intervention." (*Id.*)

against Vazquez (*id.* ¶¶ 84, 87), upholding Spano's decision to terminate Vazquez as a business agent (*id.* ¶ 94).

III.     Plaintiff's Removal as President of Local No. 10

On November 7, 2003, Spano filed charges against Vazquez, seeking to remove Vazquez as President of Local No. 10. (D.E. 1 ¶ 28 in case No. 04-861.) These charges were based in substantial part on the November 4, 2003, arbitration award that upheld Spano's decision to terminate Vazquez as a CSJB business agent. (*Id.* ¶ 29.) On November 19, 2003, a hearing was held, at which hearing a panel convened to hear Spano's charges against Vazquez and decided to remove Vazquez from his position as President of Local No. 10. (*Id.* ¶ 30.) This hearing, according to Vazquez, was conducted in violation of Local No. 10's constitution and other union documents. (D.E. 1 in case No. 04-1798 ¶¶ 101-102.) Vazquez alleges that Spano prejudiced these proceedings against him. (*Id.* ¶ 106.) The panel issued a written decision on November 25, 2003, removing Vazquez as President of Local No. 10. (D.E. 1 in case No. 04-861 ¶ 31.) Vazquez appealed this decision, and the appeal was denied. (D.E. 1 in case No. 04-1798 ¶ 112.)

## ANALYSIS

IV.     Threshold Issues

The parties' briefing raises, among others, threshold issues that implicate both personal and subject-matter jurisdiction questions. *See Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 808 n.3 (7th Cir. 2002) ("Service of process is a prerequisite to a district court's exercise of personal jurisdiction over a defendant."); *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994). ("Jurisdiction is a threshold issue . . . and the court has an independent duty to satisfy itself that it has subject-matter jurisdiction."). In this regard, the parties disagree over

whether this Court has subject-matter jurisdiction over various claims advanced in Plaintiff's Motion to Vacate and Complaint. Defendants also argue that, with respect to case number 04-861, the Plaintiff never effected service of process. It is proper for the Court to address the personal jurisdiction issue first, and the Court does so below. *See Cent. States S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 n. 2 (7th Cir. 2000) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999)). These issues must be addressed before the Court determines whether Plaintiff has stated claims sufficient to survive Defendants' 12(b)(6) motion.

V.     Standard on a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

The standard that a district court uses to evaluate motions brought under Federal Rule of Civil Procedure 12(b)(6) is well established. In this regard, a "'complaint [or part of a complaint] should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Strasburger v. Bd. of Educ., Hardin County Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 359 (7th Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). When evaluating the plaintiff's pleadings, a district court must "accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Jones v. Gen. Elec. Co.*, 87 F.3d 209, 211 (7th Cir. 1996).

VI.     Personal Jurisdiction in Case Number 04-861

Defendants argue that Vazquez did not serve CSJB and Local No. 10 in case number 04-861 in the manner required by Federal Rule of Civil Procedure 4 and, therefore, "there has been no effective service of process." (D.E. 11 in case No. 04-861 at 4.) In this regard, Defendants

argue that Vazquez served the Motion to Vacate upon CSJB and Local No. 10 by mail, and that there was no summons, complaint, or request for a waiver of service accompanying the motion. (*Id.* at 3.) Defendants contend that this manner of service is improper under Federal Rule of Civil Procedure 4. In support, Defendants point to Federal Rule of Civil Procedure 4(c)(1), which requires that "a summons shall be served together with a copy of the complaint." Fed. R. Civ. P. 4(c)(1). Defendant further points out that this rule provides that service upon associations may be effected under "the law of the state in which the district court is located, or in which service is effected," or "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1) (referencing Fed. R. Civ. P. 4(e)(1)).

Plaintiff responds by arguing in the alternative. Plaintiff contends that service in case number 04-861 was properly effected under Section 12 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § *et seq.*, and Federal Rule of Civil Procedure 5. (D.E. 28 in case No. 04-861 at 9.) In this regard, Plaintiff explains that the Motion to Vacate was "'duly served upon' Defendants by placing it . . . in the mail" and that it was personally served upon counsel for CSJB and Local No. 10.[3] (*Id.* at 8.) Plaintiff contends that this service is effective because "Section 12 of the [FAA] provides that 'notice of motion to vacate . . . must be served upon the adverse party or his

---

[3]     The certificate of service attached to the Motion to Vacate indicates that Terrance McGann ("McGann"), Vazquez's former attorney, served John Ward ("Ward"), counsel for CSJB and Local No. 10, with a copy of the Motion to Vacate. (*See* D.E. 28 in case No. 04-861, Ex. 3.) The certificate does not indicate the manner by which Ward was served, although it states that Ward was served "at" an address listed for him on the service list. (*Id.*) The certificate also states that McGann sent a copy of the Motion to Vacate by United States mail (*id.*) to Ward, Spano, and Edward Alfano, the President of Local No. 10 (D.E. 1 in case No. 04-861 at 13).

8

attorney within three months after the award is . . . delivered. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice or [sic] motion in an action in the same court.'" (*Id.* at 9 (quoting 9 U.S.C. § 12).) Alternatively, Vazquez requests that, if service has not been effected, the Court exercise its discretion under Federal Rule of Civil Procedure 4(m) "and direct that service be effected within a specified period of time." (*Id.* at 11.)

The service-of-process issue, as framed by the parties, essentially boils down to whether Vazquez should have served the Motion to Vacate in case number 04-861 as one is required to serve a complaint under Federal Rule of Civil Procedure 4 or as one is permitted to serve a motion under Federal Rule of Civil Procedure 5. (Federal Rule of Civil Procedure 5 is implicated under Section 12 of the FAA, which instructs that a motion to vacate be served "as prescribed by law for service of notice of motion in an action in the same court." 9 U.S.C. § 12.) Federal Rule of Civil Procedure 5 provides that a motion may be served upon a party's attorney, *see* Fed. R. Civ. P. 5(b)(1), and by mail, *see* Fed R. Civ. P. 5(b)(2)(B). With respect to Federal Rule of Civil Procedure 4, the parties apparently assume at least the following for purposes of this issue: (1) that Defendants are "associations" for purposes of Rule 4(h); (2) in-person service, rather than service by mail, is required under Rule 4(h), if it applies; (3) Illinois law (which is implicated by Rule 4(h) by its reference to Rule 4(e)(1)) requires in-person service on an association; and (4) neither Ward nor Spano (see note 3, *supra*) are permitted to accept service on the Defendants' behalf.[4] The Court need not, however, explore these apparent assumptions,

---

[4]     Federal Rule of Procedure 4(h) requires that associations be served "by delivering a copy of the summons and of the complaint" to specific classes of individuals or as one would serve an individual under Federal Rule of Civil Procedure 4(e)(1), *i.e.*, as one would serve an association

given the Court's ruling on this service issue, which is set forth below.

Defendants cite *District No. 8, International Association of Machinists, AFL-CIO v. Grindmaster Crathco Systems, Inc.*, No. 02-4346, 2002 WL 31115588, at \*1 (N.D. Ill. Sept. 23, 2002) (Manning J.), for the proposition that, in a case involving Section 301 of the LMRA and the FAA, service must be effected in accordance with Federal Rule of Civil Procedure 4. The Court, however, need not decide whether *Grindmaster* correctly states the law. (It appears to be an issue that has not been addressed by the Seventh Circuit or any district court besides *Grindmaster* in the Seventh Circuit.[5]) Even assuming that Plaintiff's method of service was improper and the time period for serving Defendants with process has expired, the Court has discretion to extend the time for service under Federal Rule of Civil Procedure 4(m). *See Coleman v. Milwaukee Bd. of Sch. Directors*, 290 F.3d 932, 934 (7th Cir. 2002) (citing, among other cases, *Henderson v. United States*, 517 U.S. 654, 662 (1996)). For the reasons set forth below, the Court exercises that discretion here, to the extent that service under Federal Rule of Civil Procedure 4 is required.

The Seventh Circuit has indicated that granting such an extension is permissible, even

under the law of the State of Illinois. Fed. R. Civ. P. 4(h); *see also* Fed. R. Civ. P. 4(e)(1).

[5]     The parties briefs provided virtually no authority on this issue, despite an express request for citation of relevant authority. The Court was able to find some authority outside of this district addressing the issue, although not in the LMRA context. For instance, in *Carmel v. Circuit City Stores*, No. 99-240, 2000 WL 1201891, at \*1 (E.D. Pa. Aug. 22, 2003), the plaintiff's motion to vacate an arbitration award, similar to Vazquez's motion in case number 04-861, "was the initial pleading in th[e] case and was purportedly served upon [the defendant] by mailing copies of the document via the United States Mail both to the attorney who had represented [the defendant] at the arbitration and to [the defendant's] [c]orporate [c]ounsel." *Id.*, at \*1. The court assumed that the service requirements of Federal Rule of Civil Procedure 4 applied. *See id.* at 2-3.

absent a showing of good cause, provided that the court determines that there is excusable

neglect. The Seventh Circuit recognized in *Coleman v. Milwaukee Board of School Directors*,

290 F.3d 932 (7th Cir. 2002), a case upon which Defendants rely in support of their service-of-

process argument, that

> Where . . . the defendant does not show any actual harm to its ability to defend the
> suit as a consequence of the delay in service, where indeed it is quite likely that
> the defendant received actual notice of the suit within a short time after the
> attempted service, and where moreover dismissal without prejudice has the effect
> of dismissal with prejudice because the statute of limitations has run since the
> filing of the suit . . . , most district judges probably would exercise lenity and
> allow a late service, deeming the plaintiff's failure to make timely service
> excusable by virtue of the balance of hardships.

*Coleman*, 290 F.3d at 934.

The Court finds that the service issue *sub judice* mirrors the factual scenario identified by

the Seventh Circuit in *Coleman*. The Seventh Circuit recognized that in such a scenario, "most

district judges probably would exercise lenity and allow a late service, deeming the plaintiff's

failure to make timely service excusable by virtue of the balance of the hardships." *Coleman*,

290 F.3d at 934. The Court has considered the potential hardships to both parties and finds that

they balance in favor of Vazquez. Defendants do not argue that they would be prejudiced in *any*

way by extending the time for service of process. Vazquez, on the other hand, "asks the court to

consider the irreparable harm to the Plaintiff due to his inability to refile the Motion to Vacate the

Arbitrators' Awards [because of the statute of limitations], while Defendants were served with

the Motion and have not been prejudiced in any meaningful way." (D.E. 28 in case No. 04-861

at 11.) It also appears that Defendants received notice of case number 04-861 shortly after

Vazquez's attempted service. In this regard, Defendants' attorneys filed appearances on

Defendants' behalf in case No. 04-861 on March 26, 2004 (D.E. 4 in case No. 04-861)—approximately two months after the Motion to Vacate was filed and within the 120 days Vazquez had to serve the Defendants under Federal Rule of Civil Procedure 4(m). In his papers, Vazquez variously makes serious allegations about Spano and his union activities — including even insinuations of the influence of organized crime. (D.E. 28 in case No. 04-861 at 14 (referencing possible connections to "John Matassa, Jr., a reputed gangster," and stating that "Plaintiff, Ruiz, Keating, and Kane were in a constant struggle with Spano over his autocratic exercise of authority, attempts to destroy union democracy, and attempts to bring a criminal element into the unions.").) The Defendants' briefs present a very different picture—denying all of the Plaintiff's allegations and setting forth the view that Plaintiff was in the wrong. Given the lack of any prejudice regarding the service of process issue, the Court believes it best to have this case proceed forward to the merits.

Accordingly, Vazquez is given 21 days in which to effect service under Federal Rule of Civil Procedure 4. Defendants are encouraged to consider waiving service of process in an effort to facilitate the prompt resolution of this matter.[6]

---

[6]     Defendants argue that Vazquez cannot collaterally attack the arbitration award that upheld his termination as a business agent of CSJB through the action in case number 04-1798. Defendants point out that the arbitration award concerning his CSJB employment was issued on November 4, 2003, and that Plaintiff filed his Complaint in case number 04-1798 on March 8, 2004, more than four months after the issuance of the award. Defendants contend that Plaintiff's complaint is improper as to any challenge to arbitration award(s) because any challenge to such awards needed to be made within 90 days. Because this Court has given Plaintiff leave to serve his Motion to Vacate the arbitration award in compliance with Rule 4 of the Federal Rules of Civil Procedure (assuming such service is even required), the Defendants' collateral challenge point now appears moot in practical terms. Moreover, the defendant unions contend that Plaintiff's removal as President of Local No. 10 was not the product of any arbitration award at all (see D.E. 11 in case No. 04-861 at 3 n.3), so their "improper collateral challenge" argument would not appear, on its own terms, to apply to those aspects of case number 04-1798 that relate

VII.    The Court Does Not Have Jurisdiction Under the Federal Arbitration Act

Vazquez contends that this Court has subject-matter jurisdiction over his Motion to Vacate in case number 04-861 under, among other federal statutes, the FAA. (D.E. 1 in case number 04-861 ¶ 3; D.E. 28 in case No. 04-861 at 6.)  Seventh Circuit precedent teaches, however, that it is "well established" that Section 10 of the FAA "does not constitute a grant of subject matter jurisdiction." *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1104 (7th Cir. 1996); *see also Southland Corp. v. Keating*, 465 U.S. 1, 16 n.9 (1984).  As a consequence, "[t]here must be an independent basis of federal [subject-matter] jurisdiction before a district court can entertain a motion to vacate under [Section 10]." *Minor*, 94 F.3d at 1104-1105 (collecting cases).  A plaintiff seeking to vacate an arbitration award under Section 10 must, therefore, demonstrate that a federal district court has either diversity or federal question subject-matter jurisdiction over the dispute. *See id.* at 1105.  With respect to federal question subject-matter jurisdiction, the plaintiff must demonstrate that the grounds on which the plaintiff seeks to vacate the arbitration award confer subject matter jurisdiction on a federal district court. *Id.*

In light of the foregoing, Vazquez must demonstrate that this Court has subject-matter jurisdiction over his claims on some ground independent of the FAA.  As discussed below, Vazquez points to both the LMRA and LMRDA.  Defendants argue that this Court does not have subject-matter jurisdiction over the claims in Vazquez's Motion to Vacate or Complaint under

---

to Plaintiff's removal as President of Local No. 10.  To the extent the defendant unions believe that any "collateral challenge" issues remain (notwithstanding that the allegations in the Motion to Vacate are substantially similar to those in case number 04-1798), it is not possible at this stage to responsibly address such issues, as they are not addressed in the parties' briefs.  The Court, therefore, finds Defendants' collateral attack argument unavailing, at least as presently framed.

either the LMRA or LMRDA.

VIII. The Court Does Have Jurisdiction Over Some Claims Under Section 301 of the LMRA

Count I of Vazquez's Complaint alleges Vazquez was removed as a business agent of CSJB and the President of Local No. 10 in violation of certain union governing documents. (D.E. 1 in case No. 04-1798 ¶¶ 118-121.) Count II alleges that Vazquez was removed as a business agent of CSJB and as the President of Local No. 10 in violation of certain unidentified union constitutional provisions. (*Id.* ¶¶ 122-125.) Defendants argue that this Court lacks subject-matter jurisdiction under Section 301 of the LMRA over Counts I and II of Vazquez's Complaint in case number 04-1798 and over Vazquez's Motion to Vacate in case number 04-861. (D.E. 11 in case No. 04-861 at 5.)

Vazquez responds generally to Defendants' Section 301 jurisdictional arguments by arguing that "his due process rights were violated throughout the arbitration process, that this constituted a violation of the [International Union's] Constitution, and [Vazquez] petitioned the International President to intervene." (D.E. 28 in case No. 04-861 at 11.) Vazquez contends that the "[International Union's] Constitution governs the actions of its subordinate bodies, including the CSJB[,] and the [International Union's] Constitution specifically requires the International [Union] to defend and extend democratic institutions and procedures and the civil rights and liberties of its members and all others." (*Id.* (internal quotations omitted).) Plaintiff further appears to contend that the International Union violated its constitution by failing to become involved in his arbitration proceedings after "he petitioned the International President to intervene." (*Id.*) Vazquez argues that "[t]here is no question that [he] is a member of the International [Union,] and as such is entitled to the guarantee of protection of his civil rights and

14

due process promised in the [International Union's] Constitution." (*Id.*) Vazquez argues that he was a member of the IUANPW and, as such, was "entitled to the protection of his rights as a member in any proceeding which involved the CSJB, since the CSJB is a labor organization subordinate to the International [Union]." (*Id.* at 12-13.)

As best the Court can tell from Vazquez's filings, his argument breaks down into the following components: (1) Vazquez is a member of the International Union; (2) the International Union guarantees him certain protections throughout the course of an arbitration proceeding; (3) the CSJB and Local No. 10 are subordinate to the International Union; (4) Spano, the CSJB President, conducted the CSJB arbitration proceeding in a manner that violated Vazquez's due process rights; (5) Vazquez petitioned the International Union to intervene in the CSJB arbitration proceeding; (4) the International Union did not intervene, although it could and should have, which failure to intervene violated certain provisions in the International Union's constitution; (5) because CSJB is subordinate to the International Union, the International Union could have protected Vazquez's rights in the arbitration proceeding regarding his removal as a CSJB business agent; and (6) the CSJB arbitration proceeding tainted the hearing on Vazquez's removal as President of Local No. 10. (*Id.*)

In this regard, Vazquez contends that this Court has federal question subject matter jurisdiction over his Motion to Vacate and Complaint under Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185(a).[7] This section provides that

> Suits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations, may be brought in any district court of

---

[7]     Plaintiff does not allege that diversity jurisdiction is appropriate, nor does such an allegation appear possible due to the citizenship of the parties.

the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that labor union constitutions are contracts covered by this provision. *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 100 (1991); *see also Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996) (collecting cases). And as Plaintiff points out, the Supreme Court has also held that Section 301 extends subject-matter jurisdiction of the federal district courts "to suits on union constitutions brought by individual union members" as third-party beneficiaries. *Wooddell*, 502 U.S. 93, 98; *see also id.* at 100. In *Wooddell*, the Supreme Court explained that "union constitutions are an important form of contract between labor organizations. Members of a collective-bargaining unit are often the beneficiaries of such interunion contracts, and when they are, they . . . may bring suit on these contracts under § 301." *Id.* at 101; *see also Korzen*, 75 F.3d at 288. Defendants are correct, however, that mere "claims for violation of an agreement between Plaintiff and his employer [CSJB] are not subject to Section 301 jurisdiction, even if Plaintiff's employer is a union." (D.E. 11 in case No. 04-861 at 5 (citing *Korzen*, 75 F.3d at 288).)

The Seventh Circuit has distinguished between a suit for the breach of a constitution of an international union and the constitution of a local union. *See Korzen*, 75 F.3d at 288. This distinction is material to jurisdictional questions because Section 301 expressly limits its grant of federal jurisdiction to contracts between an employer and a labor organization (*i.e.*, a collective bargaining agreement) or between two or more labor organizations. *See* 28 U.S.C. § 185(a); *see also Korzen*, 75 F.3d at 288. An international union's constitution "is a contract between the

16

international [union] and its locals," and therefore a suit based on a breach of an international

union's constitution is considered a suit "between . . . labor organizations" for purposes of

Section 301. *Korzen*, 75 F.3d at 288. In contrast, "[t]he constitution of a local union . . . is a

contract between the union and its members," *id.*, a relationship that is not covered by the text of

Section 301, *see* 28 U.S.C. § 185(a). A suit based on a breach of a local union's constitution,

therefore, "is not within the scope of [S]ection 301." *Korzen*, 75 F.3d at 288; *see also id.* ("So

there is federal jurisdiction over the plaintiffs' claim for breach of the international's constitution,

of which they as members of the union are third-party beneficiaries, but not over their claim for

breach of the local's constitution.").

With respect to Count I of Vazquez's Complaint, this Court, therefore, does not have

subject-matter jurisdiction under Section 301 over Vazquez's claims that allege violations of any

union governing documents other than the International Union's constitution or perhaps also the

CSJB constitution or any similar inter-union agreement.[8] To the extent that the allegations in

Count I refer to documents such as, for example, the CSJB employee handbook, or documents of

Local No. 10, these allegations are insufficient for purposes of Section 301 jurisdiction. *See*

*Dinuzzo v. Local 79, Laborers Int'l Union of N. Am., AFL-CIO*, No. 03-4112, 2003 WL

21378596, at *3 (S.D.N.Y. Jun. 16, 2003) ("Thus, the existence of subject matter jurisdiction

pursuant to § 301 turns on whether [the plaintiff] alleges a violation of the Local's or the

---

[8]     Defendants appear to concede that these constitutions "are contracts between labor
organizations for purposes of [S]ection 301 jurisdiction." (D.E. 29 in case No. 04-861 at 7.)
With respect to CSJB's constitution, Count I of Vazquez's Complaint, which purports to assert a
claim for breach of contract under Section 301, refers generally to "governing documents" of an
unidentified "union" (D.E. 1 in case No. 04-1798 ¶ 119), and Vazquez alleges that the CSJB is
an umbrella organization comprised of five local unions (*see* D.E. 28 in case No. 04-861 at 4).

International's Constitution."); *Ranker v. Int'l Union of Operating Eng'rs, Local 18*, No. 03-7017, 2003 WL 403182, at \*9 (N.D. Ohio Jan. 24, 2003) ("Following the reasoning of *Korzen*, this court has independent subject matter jurisdiction over plaintiff's claims based on the International Union constitution."). Allegations of breaches of these documents are "straightforward claim[s] for breach of contract under state common law." *Korzen*, 75 F.3d at 288.

Certain of Vazquez's allegations in Count I do appear sufficient for purposes of Section 301 jurisdiction. In this regard, Count I does allege that, with regard to the arbitration hearing removing Vazquez as a business agent, Vazquez's "contractual rights to due process, free speech, free association, and freedom from threats and intimidation, as guaranteed by contract, as embodied in the [International Union's] constitution were breached." (D.E. 1 in case No. 04-1798 ¶ 120(g).) Vazquez alleges the same with respect to the decision removing him from the office of President of Local No. 10. (*Id.* ¶ 121(f).) In Count II of Vazquez's Complaint, he again alleges that the Defendants breached certain unidentified union governing documents, which he alleges creates "Section 301 Liability." As with Count I, to the extent that Count II contemplates Section 301 jurisdiction for allegations that the Defendants breached anything other than the International Union's constitution and also perhaps the CSJB's constitution or other inter-union agreement, such reliance is misplaced. The Court does not have Section 301 subject-matter jurisdiction over the allegations in Count II, to the extent they allege violations of documents such as Local No. 10's constitution. Similarly, the Court does not have Section 301 subject-matter jurisdiction over Vazquez's Motion to Vacate to the extent it purports to be founded a breach of anything other than the constitution of the International Union, the constitution of

CSJB, or some other inter-union contract.

The Court notes that it is unclear what rights Vazquez contends that the International Union's or CSJB's constitution grants him with respect to the Defendants. But this much is clear: Plaintiff alleges that he is a member of the International Union. "As [a] member[] of the [International Union], [he] can sue to enforce the [International Union's] constitution." *Korzen*, 75 F.3d at 289. "What the constitution means in relation to [his] claim is a question about the *merits* of that claim." *Id.* (emphasis added).[9] At this stage, however, the Court need not, and cannot, reach the merits of Plaintiff's claim. This is particularly true given that the gravamen of the motion to dismiss has been based on sweeping assertions of a jurisdictional bar (which as explained herein, are rejected) and were not focused on particular aspects of the claims (which claims, to be entirely fair to the defendants, were written in fairly generic terms). The Court, therefore, grants Defendants' motion in part and denies it in part with regard to Counts I and II and Vazquez's Motion to Vacate.[10]

---

[9]    Although the parties do not focus on this issue in their papers, in this regard, *Korzen* suggests that for Plaintiff ultimately to prevail with respect to some of his claims, he must show that the provisions of the inter-union agreements upon which he would rely are directed towards affording him rights as an employee of the CSJB and not as merely a member of the union. *See Korzen*, 75 F.3d at 289-90. The same principle presumably applies by extension to any inter-union agreements upon which Plaintiff would seek to rely vis-a-vis his termination as an officer of Local No. 10. Given the lack of briefing on these matters, however, the Court need not pass on any of these issues pending further briefing in connection with summary judgment or pretrial proceedings.

[10]    Defendants appear to suggest that Vazquez cannot establish, among other things, that the Court has jurisdiction under the LMRDA. (D.E. 29 in case No. 04-861 at 6.) It appears, however, that Defendants' argument in this regard focuses on whether Vazquez can state a claim under the LMRDA. The Court addresses this argument below.

IX.     LMRDA Claims

Vazquez also contends that this Court has subject-matter jurisdiction under the LMRDA. (D.E. 28 in case No. 04-861 at 16.) Title I of the LMRDA, Section 101, grants union members a "Bill of Rights." 29 U.S.C. § 411; *see also Local No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen, and Packers v. Crowley*, 467 U.S. 526, 528 (1984). Specifically, Section 101(a)(1) of the LMRDA provides that "[e]very member of a labor organization shall have equal rights and privileges" with respect to nominating candidates, voting, attending membership meetings, and to participating in the deliberative process. 29 U.S.C. § 411(a)(1); *see also Gee v. Textile Processors, Serv. Trades, Health Care, Prof'l and Technical Employees Int'l Union*, No. 99-3577, 2000 WL 336559, at *7 (N.D. Ill. Mar. 28, 2000). "[S]ection 101(a)(2) of [the] LMRDA grants union members the rights of freedom of speech and assembly, including the right to 'express any views, arguments or opinions.'" *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 715, 719 (7th Cir. 2002) (citing 29 U.S.C. § 411(a)(2)). "[S]ection 609 [of the LMRDA] provides that a union and its officers may not fine, suspend, expel or otherwise discipline any union members for exercising such rights to free speech and assembly." *Id.* (citing 29 U.S.C. § 529). Section 102 of the LMRDA "permits any union member to sue for relief if he or she was discharged as part of a purposeful and deliberate attempt to suppress dissent within the union." *Brunt*, 284 F.3d at 720.

Section 101(a)(5) of the LMRDA "guarantee[s] that [union] members will not be disciplined by their union without certain procedural protections." *Stevens v. N.W. Ind. Dist. Council, United Bhd. of Carpenters*, 20 F.3d 720, 727 n.16 (7th Cir. 1994); *see also English v. Crowell*, 969 F.2d 465, 469 (7th Cir. 1992). This section requires that before certain types of

20

disciplinary actions are taken against union members, the member must be " (A) served with written specific charges; (B) given a reasonable time to prepare [their] defense; (C) afforded a full and fair hearing." *English*, 969 F.2d at 469. The Seventh Circuit has instructed that this section "entitles a union member to notice of charges, time to prepare a defense, and a full and fair hearing whenever he is fined, suspended, expelled or otherwise disciplined." *Id.*

In Count III of his Complaint, Vazquez alleges that his termination as a CSJB business agent and his removal from his position as President of Local No. 10 violated the LMRDA. In this regard, Vazquez contends that "Defendants intentionally and in bad faith terminated [him] from his position as a [b]usiness [a]gent of CSJB as part of a pattern of intimidation by [D]efendants that was specifically intended to suppress dissent within the union and to establish the autocratic rule of Spano." (D.E. 1 in case No. 04-1798 ¶ 127; *see also* D.E. 28 in case No. 04-861 at 17.) Vazquez further contends that Defendants terminated him from his position as President of Local No. 10 in the same manner and for the same reasons. (D.E. 1 in 04-1798 ¶ 128.)

Vazquez also contends that the Defendants violated his right to a "full and fair" hearing under Section 101(a)(5)(c) of the LMRDA by convening an arbitration panel that was biased against him. (*Id.* ¶ 130.) Vazquez alleges that the Defendants violated the LMRDA by failing "to provide [him] specific written charges, a reasonable time to prepare a defense, a full and fair hearing, and failed to adduce true and honest evidence supporting the charges against him." (*Id.* ¶ 131.) Vazquez also alleges that the "Defendants intentionally and in bad faith disciplined [him] in retaliation for exercising his protected free speech guaranteed by Sections 101(a)(1) and 101(a)(2) of the LMRDA, 29 U.S.C. §§ 411(a), 411(a)(2)[,] and denied [Vazquez] his due

21

process rights guaranteed by Sections 101(a)(5) of LMRDA, 29 U.S.C. §[] 411(a)(5), in violation of Section 609 of the LMRDA, 29 U.S.C. § 529. (*Id.* ¶ 132.)

Vazquez cites *Sheet Metal Workers' International Association v. Lynn*, 488 U.S. 347 (1989), in support of his contention that his removal from the elected office of President of Local No. 10 is actionable under Section 101(a)(2). In *Lynn*, the Supreme Court addressed the issue of "whether the removal of an elected business agent, in retaliation for statements he made at a union meeting in opposition to a dues increase sought by the union trustee, violated the LMRDA." *Id.* at 349. A trustee removed the plaintiff in *Lynn* from his position as an elected business representative because of his opposition to an increase in union dues. *Id.* at 350. The *Lynn* plaintiff subsequently brought suit in federal district court, alleging that his removal from office violated Section 101(a)(2) of the LMRDA. *Id.* The Supreme Court held that under the circumstances of the case, the plaintiff's "retaliatory removal stated a cause of action under § 102." *Id.* at 355; *see also id.* at 358.

In so holding, the Supreme Court distinguished *Finnegan v. Leu*, 456 U.S. 431 (1982), which held "that the discharge of a union's appointed business agents by the union president, following his election over the incumbent for whom the business agents had campaigned, did not violate" Sections 101 and 609 of the LMRDA. *Lynn*, 488 U.S. at 348-349; *see also Brunt*, 284 F.3d at 719. The Supreme Court noted that in *Finnegan*, it did not consider "whether the retaliatory removal of an elected official violates the LMRDA," the factual scenario that was before it in *Lynn*. *Lynn*, 488 U.S. at 353. The defendant in *Lynn* viewed the *Lynn* plaintiff's "status as an elected, rather than an appointed, official . . . immaterial . . . .," *id.* at 354, and argued that the removal of an elected official was permissible under *Finnegan*. The Supreme

22

Court disagreed, distinguishing between the removal of an elected and appointed business agent, and holding that an elected business agent could, under the appropriate circumstances, state a claim under Section 101(a)(2) and Section 102. *See id.* at 355.

In reaching this holding, the Supreme Court recognized that the "discharges [of the appointed business agents in *Finnegan*] had some chilling effect on the free speech rights of the business agents." *Id.* But it found "this concern outweighed by the need to vindicate the democratic choice made by the union electorate." *Id.* With respect to the democratic choices of the union, the Supreme Court reasoned that its holding in *Lynn* was consistent with the basic objective of the LMRDA that it recognized in *Finnegan*: "'ensuring that unions [are] democratically governed and responsive to the will of their memberships.'" *Id.* at 352 (quoting *Finnegan*, 456 U.S. at 436.). This goal, the Supreme Court explained, was generally furthered by the newly-elected union president's "patronage-related discharge" of the appointed business agents of the ousted incumbent in *Finnegan*, in that the business agents could potentially "thwart the implementation of [the newly-elected union president's] programs." *Id.* at 354-355.

This was not the case with respect to the facts presented in *Lynn*, which involved an *elected*, rather than *appointed*, individual. The Supreme Court explained that "[t]he consequences of the removal of an elected official are much different" than the consequences of the removal of appointed business agents, citing two reasons. *Id.* at 355. First, the removal of an elected business agent denies the union membership the representative of their choice, which runs contrary to the objective of the LMRDA. *Id.* at 355. Second, "the potential chilling effect on Title I free speech rights is more pronounced when elected officials are discharged" in that "[n]ot only is the fired official likely to be chilled in the exercise of his own free speech rights,

23

but so are the [union] members who voted for him." *Id.* This chilling effect on the union membership, the Supreme Court explained, "is precisely what Congress sought to prevent when it passed the LMRDA." *Id.* In this regard, the Supreme Court noted that "democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." *Id.* Thus, a plaintiff who was removed from elected office can properly state a claim under Section 101(a)(2) and Section 102 of the LMRDA. *Id.*

Vazquez was elected to office within Local No. 10, and at the time of the events at issue here, he served as President of Local No. 10. Vazquez also was an appointed, not an elected, business agent of defendant CSJB. According to Vazquez, Spano, the president of CSJB, discharged Vazquez from his position as an appointed business agent based solely on Vazquez's disagreement with Spano over collective bargaining strategy and in an effort to chill union dissent. (*E.g.*, D.E. 28 in case No. 04-861 at 17.) Vazquez alleges that he was subsequently removed from his position as the elected President of defendant Local No. 10 at the direction of Spano, based in substantial part on Spano's decision to terminate Vazquez as an appointed business agent.

The Court first proceeds to analyze Vazquez's claim as it relates to his status as an elected officer of Local No. 10. Under *Lynn*, Vazquez has stated a claim under Section 101(a)(2), the free speech provision of the LMRDA, and Section 102 sufficient to survive Defendants' 12(b)(6) motion, in that Vazquez has alleged that he was removed from the elected position of President of Local No. 10 in retaliation for his speech. *See Lynn*, 488 U.S. at 355. In addition, Vazquez has alleged, although not necessary to his claim under Sections 101(a)(2) and Section 102, *see id.* at 355 n.7, that he was removed as President of Local No. 10 as part of

24

Spano's "autocratic plan" (D.E. 1 in case No. 04-1798 ¶ 96). This plan, according to Vazquez, had as part of its objective "to chill dissent within the union and to . . . demonstrate to all union members, union officers[,] and union business representatives" that Spano would "autocratically rule the union." (*Id.* ¶ 48; *see also id.* ¶ 58.) The Supreme Court has indicated that a plaintiff may state a claim under Section 102 where the plaintiff alleges that his or her termination was part of a systematic effort to stifle dissent within the union. *See Finnegan*, 456 U.S. at 441; *Lynn*, 488 U.S. at 355 n.7 ("[I]n *Finnegan* we noted that a § 102 claim might arise if a union official were dismissed as part of a purposeful and deliberate attempt . . . to suppress dissent within the union . . . .") (internal quotations omitted). These allegations further reinforce that Vazquez has stated such a claim.

Despite this precedent, Defendants argue that Vazquez cannot state a cause of action for retaliatory removal from his position as President of Local No. 10 under Section 102 of the LMRDA. Defendants do acknowledge that *Lynn* "held that an elected union official who was removed in retaliation for comments he made at a union meeting" could state a cause of action under Section 102. (D.E. 11 in case No. 04-861 at 10.) Defendants contend that *Lynn* does not apply to Vazquez's case because "[i]n order to bring an action under Section 102 . . ., [Vazquez's] removal from office must have been in retaliation for his exercise of free speech." (*Id.*) Defendants argue that it was Vazquez's conduct—*i.e.*, his poor performance, not his speech—that prompted his removal from his elected position as President of Local No. 10. (*Id.* at 10-11.) In contrast, as noted above, Vazquez alleges that he was removed from his position as President of Local No. 10 for disagreeing with Spano's collective bargaining strategy in Vazquez's capacity as a business agent of CSJB, and that Spano terminated him in an effort "to

chill, discourage, and repress the exercise of freedom of pure speech by any union member, any union officer[,] or any union business agent." (D.E. 1 in case No. 04-1798 ¶ 22.)

Defendants' argument in this regard is unavailing. Such an argument requires that the Court choose between two competing versions of the facts. At the motion to dismiss stage, however, the Court is required to take Vazquez's allegations as true. In reaching this conclusion, the Court takes no position on whether there is any merit to such a Section 102 claim by Vazquez or whether there are or are not other defects associated with it. The Court simply holds that the Defendants' proffered reason for dismissing such a claim—*i.e.*, that it is factually baseless—is unavailing at this stage of the litigation.

Vazquez's Section 102 LMRDA claim concerning his termination as an appointed business agent also survives under applicable caselaw given the facts of this case. To be sure, *Finnegan* held that a plaintiff holding an unelected position could not state an LMRDA claim where he was fired in a patronage situation after opposing the policies and views of the incumbent administration that eventually fired him. *Finnegan* reserved the issue, however, of whether a plaintiff holding an unelected position could nonetheless advance a Section 102 claim by showing that he was dismissed "as 'part of a purposeful and deliberate attempt . . . to suppress dissent within the union,'" *Finnegan*, 456 U.S. at 441 (citing *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir. 1973)). And subsequent decisions from circuit courts outside the Seventh Circuit and unanimous district courts in this district have "held that union members who were discharged from unelected positions may state a claim for retaliatory discharge under § 102 if the plaintiff can show that his 'firing was part of a pattern of intimidation and stifled dissent.'" *Stroud v. Senese*, 832 F. Supp. 1206, 1213 (N.D. Ill. 1993) (Alesia, J.) (quoting *Adams-Lundy v. Ass'n of*

26

*Prof'l Flight Attendants*, 731 F.2d 1154, 1158-59 (5th Cir. 1984), and collecting several other cases). To be sure, as *Stroud* indicated, the track record of such claims is not strong on the merits, as "plaintiffs face an 'uphill battle' in proving such a scheme." *Id.* at 1213 (quoting *Glover v. Ossey*, No. 93-0421, 1993 WL 303120, at *3 (N.D. Ill. Aug. 5, 1993) (Marovich, J.)). But Vazquez makes the allegation here, and at this stage of the proceedings, he has alleged enough to survive. Whatever intellectual tension might exist between the idea that an employee holding an appointed position may be terminated where his policy views are incompatible with those of the incumbent union officials, on the one hand, and the view that an unelected plaintiff may advance a claim where he can show that he was terminated as part of a deliberate attempt to intimidate and stifle dissent, on the other, if the latter principle is valid at all,[11] it must reasonably include a situation where the plaintiff suggests that he and others were fired as part of a campaign to intimidate and suppress information about, *inter alia*, the introduction of the influence of organized crime into a union. (Again, the Court reiterates that the Defendants deny any and all allegations of wrongdoing and advance the view that Vazquez was a wrong-doer.) Defendants have failed to establish that dismissal at this stage of the proceedings is appropriate.

Defendants also take issue with Vazquez's attempt to state a claim under Section 101(a)(5) of the LMRDA. Defendants concede that Vazquez has alleged that the "[D]efendants failed to provide [Vazquez] specific written charges, a reasonable time to prepare his defenses, a full and fair hearing[,] and failed to produce true and honest evidence." (D.E. 11 in case No 04-861 at 13.) Defendants contend that Vazquez's claim in this regard "is belied by the evidence

---

[11]     As indicated, there appears to be substantial authority recognizing the principle, and defendants offer no authority rejecting the principle.

and exhibits introduced at the hearing." (*Id.*) In Defendants' view, "[b]ecause the record contains substantial evidence in support [of their position], [Vazquez] fails to state a cause of action for violation of Section 105(a)(5)(C)." (*Id.* at 14.) As with Defendants' Section 102 argument above regarding speech versus misconduct, however, this argument is unavailing in the context of a motion to dismiss. Defendants are not permitted to trump the allegations in Vazquez's Complaint at this stage of the litigation with their competing version of the facts.

## CONCLUSION

Defendants' Motion to Dismiss is granted in part and denied in part. This Court lacks Section 301 subject-matter jurisdiction over the claims in Vazquez's Complaint and Motion to Vacate to the extent that they allege Defendants breached any governing documents beyond the International Union's constitution and possibly the CSJB's constitution or other inter-union contract. Count III of Vazquez's Complaint states a claim under Section 101(a)(2) and Section 102 of the LMRDA on the ground that he was discharged from his elected office of President of Local No. 10. Count III also states a claim under Section 101 of the LMRDA to the extent it alleges retaliatory removal from the appointed position of CSJB business agent pursuant to a pattern of intimidation and stifled dissent, as explained further above.

So Ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: *January 25, 2005*

28